**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben Garza, | No. CV-14-01901-PHX-SRB |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Before the Court is Petitioner Ruben Garza's Motion for Authorization to Appear in Ancillary State-Court Proceedings and for Temporary Stay and Abeyance. (Doc. 67.) Garza asks the Court to stay and hold his case in abeyance while he pursues state court relief. He also seeks permission for his federal habeas counsel to appear on his behalf in state court. Respondents filed a response opposing a stay and Garza filed a reply. (Docs. 68, 69.) For the reasons set forth below, the motion is denied.

I.  **BACKGROUND**

A jury convicted Garza of two counts of first degree murder for the 1999 shooting deaths of Ellen Franco and Lance Rush. The jury declined to impose death for the murder of Franco, but authorized the death penalty for the murder of Rush. The trial court sentenced Garza to death for the murder of Rush and to life without possibility of parole for the murder of Franco. The Arizona Supreme Court affirmed the convictions and sentences. *State v. Garza*, 216 Ariz. 56, 63, 163 P.3d 1006, 1013 (2007). Garza filed a

post-conviction relief petition, which the court denied without an evidentiary hearing. The Arizona Supreme Court denied review.

Garza now seeks a stay so that he can return to state court and present two new claims. He argues that *Lynch v. Arizona*, 136 S. Ct. 1818 (2016) (per curiam), and *Hurst v. Florida*, 136 S. Ct. 616 (2016), are significant changes in the law that would probably overturn his sentence under Arizona Rule of Criminal Procedure 32.1(g).

## II. APPLICABLE LAW

Garza's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(b)(1)(A). Although AEDPA does not deprive courts of the authority to stay habeas corpus petitions, it "does circumscribe their discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). The Supreme Court has emphasized that the stay and abeyance of federal habeas petitions is available only in limited circumstances. *Id.* at 277. "Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.*

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief proceedings ("PCR"). Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings. It provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

When a petitioner has an available remedy in state court that he has not procedurally defaulted, it is appropriate for the federal court to stay the habeas

proceedings if (1) there was good cause for the petitioner's failure to exhaust his claims first in state court, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication that he engaged in intentionally dilatory litigation tactics. *See Rhines*, 544 U.S. at 277.

## III. ANALYSIS

Garza contends that under Rule 32.1(g) of the Arizona Rules of Criminal Procedure, the United States Supreme Court's recent decisions in *Lynch* and *Hurst* provide an available remedy in state court. Rule 32.1(g) provides that a defendant may file a petition for post-conviction relief on the ground that "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. 32.1(g).

Arizona courts have characterized a significant change in the law as a "transformative event," *State v. Shrum*, 220 Ariz. 115, 118, 203 P.3d 1175, 1178 (2009), and a "clear break" or "sharp break" with the past. *State v. Slemmer,* 170 Ariz. 174, 182, 823 P.2d 41, 49 (1991). "The archetype of such a change occurs when an appellate court overrules previously binding case law." *Shrum*, 220 Ariz. at 118, 203 P.3d at 1178. A statutory or constitutional amendment representing a definite break from prior law can also constitute a significant change in the law. *Id.* at 119, 203 P.3d at 1179; *see State v. Werderman*, 237 Ariz. 342, 343, 350 P.3d 846, 847 (App. 2015).

In *Lynch*, 136 S. Ct. 1818, the Supreme Court applied *Simmons v. South Carolina,* 512 U.S. 154 (1994), to a capital sentencing in Arizona. *Simmons* held that when future dangerousness is an issue in a capital sentencing determination, the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole. 512 U.S. at 171.

In *Lynch*, the defendant was convicted of murder and other crimes. 136 S. Ct. at 1818. Before the penalty phase of his trial began, the state successfully moved to prevent his counsel from informing the jury that, if the defendant did not receive a death sentence, he would be sentenced to life in prison without possibility of parole. *Id.* at 1819. The jury sentenced him to death. *Id.* On appeal, Lynch argued that because the

state had made his future dangerousness an issue in arguing for the death penalty, the jury should have been given a *Simmons* instruction stating that the only non-capital sentence he could receive under Arizona law was life imprisonment without parole. *Id.* The Arizona Supreme Court affirmed, holding that the failure to give the *Simmons* instruction was not error because Lynch could have received a life sentence that would have made him eligible for release after 25 years—even though any such release would have required executive clemency. *Id.* at 1820.

The United States Supreme Court reversed. *Id.* The Court reiterated that under *Simmons* and its progeny, "where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole," the Due Process Clause "entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel." *Id.* at 1818 (internal quotations omitted). The Court explained that neither the possibility of executive clemency nor the possibility that state parole statutes will be amended can justify refusing a parole-ineligibility instruction. *Id.* at 1820.

*Lynch* does not represent a change in the law. It simply applies existing law to an Arizona case. It is not a transformative event of the kind described by Arizona courts in interpreting Rule 32.1(g). In *Shrum*, for example, the Arizona Supreme Court cited *Ring v. Arizona*, 536 U.S. 584 (2002), as a "significant change in the law." 220 Ariz. at 119, 203 P.3d at 1179. *Ring* "expressly overruled" *Walton v. Arizona*, 497 U.S. 639 (1990). As the Arizona Supreme Court explained, "before *Ring*, a criminal defendant was foreclosed by *Walton* from arguing that he had a right to trial by jury on capital aggravating factors; *Ring* transformed existing Sixth Amendment law to provide for just such a right." *Shrum*, 220 Ariz. at 119, 203 P.3d at 1179.

In contrast to the holding in *Ring*, which expressly overruled precedent and invalidated Arizona's capital sentencing scheme, *Lynch* did not transform Arizona law. The holding does not constitute a significant change in law for purposes of Rule 32.1(g).

Respondents also argue, correctly, that *Lynch* would not apply retroactively. *Lynch* applies *Simmons* to an Arizona capital sentencing. In *O'Dell v. Netherland*, 521 U.S. 151,

167 (1997), the Supreme Court rejected the argument that *Simmons* represented a "watershed" rule of criminal procedure that would apply retroactively. Like *Simmons*, *Lynch* is procedural and non-retroactive. Therefore, Garza is not entitled to retroactive application of *Lynch*, and his claim fails to meet the exception to preclusion set out in Rule 32.1(g).

Finally, Respondents contend that a stay is inappropriate because a claim based on *Lynch* would be time-barred. (Doc. 68 at 8.) The Court agrees.

Garza's habeas petition is subject to a one-year limitations period under § 2244(d)(1)(A). This period expired on August 6, 2015. (*See* Doc. 9 at 1.) Garza is permitted to amend his petition now only if the new claim "relates back" to the original petition. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005). A claim does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.*

Garza's new *Lynch* claim differs in both time and type from any claim raised in his habeas petition. (*See* Doc. 27.) Garza did not challenge the penalty-phase instructions which explained the possible sentences for his murder convictions. Because Garza's claim is untimely and does not relate back to a properly-filed and currently-pending claim, any attempt to amend the habeas petition to include the claim would be futile.

*Hurst*, like *Lynch*, did nothing to transform Arizona law. In *Hurst*, 136 S. Ct. 616, the Supreme Court held that Florida's capital sentencing scheme violated *Ring*. Under the Florida scheme, a jury renders an advisory verdict while the judge makes the ultimate factual determinations necessary to sentence a defendant to death. *Id.* at 621–22. The Court held that this procedure was invalid because it "does not require the jury to make the critical findings necessary to impose the death penalty." *Id.* at 622. The Supreme Court simply applied *Ring* to Florida's capital sentencing statutes.

*Hurst* does not hold, as Garza suggests, that a jury is required to find beyond a reasonable doubt that the aggravating factors outweigh the mitigating circumstances. *Hurst* held only that Florida's scheme, in which the jury rendered an advisory sentence

but the judge made the findings regarding aggravating and mitigating factors, violated the Sixth Amendment. *Hurst*, 136 S. Ct. at 620.

*Hurst* did not address the process of weighing the aggravating and mitigating circumstances. Indeed, the Supreme Court has held that the sentencer may be given "unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Zant v. Stephens*, 426 U.S. 862, 875 (1983); *see Tuilaepa v. California*, 512 U.S. 967, 979–80 (1994). In *Zant*, the Court explained that "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required." *Id.* at 875 n.13; *see Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) ("[W]e have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.").

In Arizona, in accordance with *Ring* and *Hurst*, the jury makes factual findings regarding the aggravating and mitigating factors to determine the appropriate sentence. *Hurst* did not effect a change in Arizona law for purposes of Rule 32.1(g).

Moreover, even if *Hurst* were a significant change in the law, it does not apply retroactively. The Supreme Court has held that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004). *Hurst*, which applies *Ring* in Florida, is also non-retroactive. This claim does meet the Rule 32.1(g) exception to preclusion.

Finally, as with Garza's *Lynch* claim, a claim based on *Hurst* is also time-barred because it does not relate back to anything contained in Garza's habeas petition.

Although he cites *Rhines*, Garza indicates that he is not seeking a *Rhines* stay. (Doc. 69 at 2.) Even assuming the *Rhines* framework does not apply, however, Garza is not entitled to a stay.

The Court may stay the proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American. Co.*, 299 U.S. 248, 254 (1936). To evaluate whether to stay an action, a court must the weigh competing interests that will be

affected by the grant or denial of a stay, including the possible damage that may result from the granting of a stay; the hardship or inequity a party may suffer in being required to go forward; and whether a stay will simplify or complicate issues, proof, and questions of law. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55)). "The decision to grant a stay . . . is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 133 S. Ct. 696, 708 (2013) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

If the requested stay may cause "even a fair possibility" of harm, Garza bears the burden of establishing "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. The Court finds that the relevant factors do not weigh in favor of granting a stay.

Garza asserts that "a stay of federal proceedings would advance judicial economy and conserve resources." (Doc. 69 at 7.) This does not constitute a "clear case of hardship or inequity" given the Supreme Court's admonition that staying a federal habeas petition frustrates AEDPA's objectives of encouraging finality and streamlining federal habeas proceedings. *Rhines*, 544 U.S. at 277. Denying the stay would not result in simultaneous litigation in state and federal court. To the contrary, as described above, a stay would be futile because the new claims under *Lynch* and *Hurst* are time-barred and cannot be included in an amended federal habeas petition. Therefore, Garza will suffer no prejudice from denial of the stay and judicial economy will be preserved because the claims will not be litigated twice.

## IV. APPOINTMENT OF COUNSEL

Garza asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court. The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e).

The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Id.* at 194. The Court explained "subsection (a)(2) triggers the appointment of counsel for

habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185. The Court noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client. Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment." *Id.* at 188.

Harbison addressed the concern that under the Court's interpretation of § 3599, federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." *Id.* The Court explained that § 3599(e) does not apply to those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial proceedings." *Id.* at 189. As to state post-conviction proceedings, the Court noted, "State habeas is not a stage 'subsequent' to federal habeas. That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." *Id.* at 189–90; *see Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014), *cert. denied sub nom. Lugo v. Jones*, 135 S. Ct. 1171 (2015) (explaining "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief . . ."); *Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1274 (11th Cir. 2012) (explaining "§ 3599 does not provide for federally-funded counsel to assist someone standing in Gary's shoes in pursuing a DNA motion, the results of which might serve as the basis for an extraordinary motion for a new trial").

Nevertheless, this Court has the discretion to appoint federal counsel to represent Garza in state court. In *Harbison* the Supreme Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." 556 U.S. at 190 n.7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court has determined that Garza is not entitled to a stay to exhaust claims arising from *Lynch* and *Hurst*. Based on that determination, together with the *Harbison* Court's discussion of the parameters of § 3599(e), the Court finds it is not appropriate to authorize the FPD to represent Garza in state court.

**V.      CONCLUSION**

Garza is not entitled to a stay. *Lynch* and *Hurst* are not significant changes in the law for purposes of Rule 32.1(g). In addition, the claims are also time-barred, so a stay would be futile.

Accordingly.

**IT IS ORDERED** denying Garza's Motion for Authorization to Appear in Ancillary State-Court Proceedings and for Temporary Stay and Abeyance (Doc. 67).

Dated this 11th day of January, 2017.

Susan R. Bolton
United States District Judge