**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben Garza,<br><br>                    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                    Respondents. | No. CV-14-01901-PHX-SRB<br><br><u>DEATH PENALTY CASE</u><br><br>**ORDER** |

Before the Court is Petitioner Ruben Garza's Motion for Evidentiary Development. (Doc. 54.) Respondents filed a response in opposition and Garza filed a reply. (Docs. 64, 66.) The motion is denied in part, as set forth herein.

### I.    BACKGROUND

A jury convicted Garza of two counts of first-degree murder for the 1999 shooting deaths of Ellen Franco and Lance Rush. He was sentenced to death for the murder of Rush. The Arizona Supreme Court set forth the following facts in its opinion affirming the convictions and sentence. *State v. Garza*, 216 Ariz. 56, 61–63, 163 P.3d 1006, 1011–13 (2007).

In September 1999, Ellen Franco moved into a house in Waddell, occupied by Jennifer Farley and Farley's boyfriend, Lance Rush. Ellen had recently separated from her husband, Larry Franco.

At approximately 10:30 p.m. on December 1, 1999, Farley heard a knock at the door. Upon opening the door she saw a Hispanic male who was five feet nine or ten

inches tall, about 180 to 200 pounds, and had bad acne.[1] He had a large tattoo on his left arm. The visitor pointed at Ellen, who was standing behind Farley, and said, "I am here to see her." Ellen identified the visitor as "Ben," whom Farley understood to be Ellen's relative.

Ellen went outside. Farley went to her bedroom and told Rush about the visitor. Farley then heard two gunshots. Rush and Farley scrambled to grab one of the guns they kept in their bedroom, and Farley took a pistol from her nightstand. By the time she removed the gun from its holster, the locked door to the bedroom had somehow been opened.

Rush, who had not been able to get one of the other firearms, motioned for Farley to stay in the room and went into the hallway. Farley heard a gunshot almost immediately thereafter and quickly hid in the bedroom closet. She heard several more shots.

After waiting briefly, Farley came out of the bedroom closet. She saw Ellen lying face down in the living room in a pool of blood. After determining that Ellen was alive, Farley looked for Rush. She found him in the guest bedroom opposite their bedroom. He was conscious but bleeding. Farley dialed 911, and police and paramedics arrived within minutes. Rush was lucid and said, "Someone kicked the door and started shooting." Ellen and Rush later died of their wounds.

Around 12:45 a.m. on December 2, Garza bought bandages, gauze, and hydrogen peroxide from a drugstore in west Phoenix. Later that morning, he was treated at Phoenix Baptist Hospital for a gunshot wound to his left arm. The hospital contacted Phoenix police. Garza told the responding officer that he was walking down the street when an unknown assailant drove by and shot him.

Maricopa County Sheriff's Office ("MCSO") detectives questioned Garza the next morning. Garza first claimed that he had been shot in a drive-by, but changed his story when told that he had been identified by Farley as the visitor to the Waddell house. He then stated that he had gone there to persuade Ellen to reconcile with Larry. Ellen came out and talked to him. When their conversation turned into an argument, Garza pulled out

---

[1] Garza had severe acne at the time.

his gun and shot her. Garza said he then "blacked out" and was "in a daze." He told the detectives he did not remember seeing a man at the house, but that the woman who had originally answered the door charged at him with a knife and he shot at her. At some point someone shot him and he returned fire.

Garza was arrested. On December 2 he made two phone calls from jail to Laurel Thompson. In the first conversation, Garza said he was "going to be here [in jail] for a couple years" and that he "did to someone else" what the two had discussed doing to a boyfriend who had assaulted Thompson.

In the second conversation, Thompson told Garza that he was on every newscast. Thompson asked Garza how he got caught; he told her, "I got shot." Garza asked Thompson about the news coverage and how many victims were being reported, and she said that he had killed two people. Garza told Thompson that he did not remember whom he shot, and they both chuckled. When asked whether it was self-defense, Garza said, "On one count it was, on one count it wasn't. . . . The guy shot me, then I shot him."

Garza's car was searched on December 4. Two white cloth gloves were found on the front seat floorboards. One glove was stained with blood, later identified through DNA testing as Garza's. A bloodstained green cloth glove was found under the front seat. DNA testing also identified that blood as Garza's. Garza's blood was also found on the passenger side of the car and in two locations in the hallway of the Waddell house.

A box of 9 mm ammunition was found under the driver's seat. Garza's fingerprints were on the box. The bullets were the same type as those found at the murder scene. A 9 mm pistol was found in Garza's belongings at his apartment. Testing showed that the pistol had fired the bullets found at the murder scene. No bullets fired by any other gun were discovered at the scene.

Farley identified Garza at trial as the intruder. Eric Rodriguez, a longtime friend of Garza's, testified that before the murders he rejected Garza's offer to join him in a venture that would require that they "get a little dirty" in order to make some money. Charles Guest, another acquaintance, testified that two or three weeks before the murders Garza asked if he was interested in helping Garza with some "family problems."

1
2
3
4
5

Garza's primary defense at trial was that Larry Franco had committed the murders. He claimed that law enforcement covered up Larry's involvement because Larry was a police informant. The jury found Garza guilty of two counts of first degree-murder and one count of first-degree burglary, a dangerous offense. The State alleged both felony and premeditated murder. The jury made no findings as to the theory or theories upon which the murder verdicts were based.

6
7
8

In the aggravation phase, the jury unanimously rejected the A.R.S. § 13–703(F)(5) pecuniary gain aggravator, but unanimously found the A.R.S. § 13–703(F)(8) multiple murders aggravator as to both murders.

9
10
11
12

In the penalty phase, the jury declined to impose death for the murder of Ellen, but authorized the death penalty for the murder of Rush. The court subsequently sentenced Garza to death for the murder of Rush and to life without possibility of parole for the murder of Ellen.

13
14
15
16

The Arizona Supreme Court affirmed the convictions and sentences. *Garza*, 216 Ariz. at 63, 163 P.3d at 1013. Garza filed a petition for post-conviction relief ("PCR"), which the court denied without an evidentiary hearing.[2] The Arizona Supreme Court denied review.

17
18
19
20

Garza filed an amended petition for writ of habeas corpus in this Court on July 31, 2015. (Doc. 27.) The petition is more than 400 pages long and raises 37 claims, with dozens of subclaims. In the pending motion, Garza seeks evidentiary development with respect to 16 of these claims.

## II.   APPLICABLE LAW

21
22
23
24
25

Federal habeas claims are analyzed under the framework of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Pursuant to 28 U.S.C. § 2254(d), a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law or (2) resulted in a

26
27
28

---

[2] Maricopa County Superior Court Judge Gregory H. Martin, presided over Garza's trial and sentencing. Judge Karen L. O'Connor presided over the PCR proceedings.

decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court.

The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Under § 2254(d), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), the Court reiterated that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *See Murray (Robert) v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014) ("Along with the significant deference AEDPA requires us to afford state courts' decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1).").

*Pinholster* does not bar evidentiary development where the court has determined, based solely on the state court record, that the petitioner "has cleared the § 2254(d) hurdle." *Madison v. Commissioner, Alabama Dept. of Corrections*, 761 F.3d 1240, 1249–50 (11th Cir. 2014); *see Pinholster*, 563 U.S. at 185; *Henry v. Ryan*, 720 F.3d 1073,1093 n.15 (explaining that *Pinholster* bars evidentiary hearing unless petitioner satisfies § 2254(d)); *Williams v. Woodford*, 859 F.Supp.2d 1154, 1161 (E.D. Cal. 2012).

Federal review is generally not available for a state prisoner's claims when those claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3).

In such situations, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law." *Id. Coleman* further held that ineffective assistance of counsel in post-conviction proceedings does not establish cause for the procedural default of a claim. *Id.*

In *Martinez*, the Court established for the first time a "narrow exception" to the rule announced in *Coleman. Martinez v. Ryan*, 566 U.S. 1 (2012). Under *Martinez* a petitioner may establish cause for the procedural default of an ineffective assistance claim "where the state (like Arizona) required the petitioner to raise that claim in collateral proceedings, by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* . . .' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (2015).

*Clabourne* summarizes the Ninth Circuit's *Martinez* analysis. To demonstrate cause and prejudice sufficient to excuse the procedural default, a petitioner must make two showings. "First, to establish 'cause,' he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland. Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Clabourne*, 745 F.3d at 377 (citations omitted). Second, "to establish 'prejudice,' the petitioner must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

## C. Evidentiary Development

### 1. Discovery

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356,

1358 (9th Cir. 1993). Rule 6 of the Rules Governing Section 2254 Cases provides that, "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) and (b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (emphasis added). Whether a petitioner has established "good cause" for discovery under Rule 6(a) requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09.

### 2.     Evidentiary hearing and expansion of the record

An evidentiary hearing is authorized under Rule 8 of the Rules Governing § 2254 Cases. Pursuant to § 2254(e)(2), however, a federal court may not hold a hearing unless it first determines that the petitioner exercised diligence in trying to develop the factual basis of the claim in state court. *See Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000). If the failure to develop a claim's factual basis is attributable to the petitioner, a federal court may hold an evidentiary hearing only if the claim relies on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." In addition, "the facts underlying the claim [must] be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the [petitioner] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

When the factual basis for a claim has not been fully developed in state court, a district court first determines whether the petitioner was diligent in attempting to develop the factual record. *See Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). The diligence assessment is an objective one, requiring a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams (Michael)*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to

the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. *Id.* at 438–39, 442.

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams (Michael)*, 529 U.S. at 437. The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000); *Alley v. Bell*, 307 F.3d 380, 390–91 (6th Cir. 2002); *Koste v. Dormire*, 345 F.3d 974, 985–86 (8th Cir. 2003); *McNair v. Campbell*, 416 F.3d 1291, 1299–1300 (11th Cir. 2005). The Ninth Circuit has explained that "a petitioner who 'knew of the existence of [ ] information' at the time of his state court proceedings, but did not present it until federal habeas proceedings, 'failed to develop the factual basis for his claim diligently.'" *Rhoades v. Henry*, 598 F.3d 511, 517 (9th Cir. 2010) (quoting *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005)).

Moreover, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998); *see Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Likewise, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004).

Under Rule 7 of the Rules Governing Section 2254 Cases, a federal habeas court is authorized to expand the record to include additional material relevant to the petition. Section 2254(e)(2) limits a petitioner's ability to present new evidence through a Rule 7 motion to the same extent that it limits the availability of an evidentiary hearing. *See Cooper–Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) (applying § 2254(e)(2) to expansion of the record when intent is to bolster the merits of a claim with new evidence) (citing *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004) (per curiam)).

- 8 -

1
2
3

Accordingly, when a petitioner seeks to introduce new affidavits and other documents never presented in state court, he must either demonstrate diligence in developing the factual basis in state court or satisfy the requirements of § 2254(e)(2)(A) & (B).

4

## III.   DISCUSSION

5
6
7

Garza seeks expansion of the record, discovery, and/or an evidentiary hearing on Claims 1, 2, 7, 8, 11, 12, 13, 14, 18, 19, 23, 24, 25, 27, 35, and 37. These include both exhausted and unexhausted claims. The Court addresses Garza's evidentiary development requests as follows.

8

### A.   Exhausted Claims

9
10
11
12
13
14

Respondents contend that under *Pinholster* Garza is not entitled to evidentiary development on Claims 1, 2(A), 7(A)(4)(b), (c), (d), (e), and (f), 11(A), (B), (C), 12, 13, 14, 18, 19, 27, and 35, because those claims were adjudicated on the merits in state court. They also argue that evidentiary development is foreclosed because Garza did not diligently pursue the new evidence in state court. The Court agrees that Garza was not diligent for purposes of § 2254(e)(2).[3]

15

### Claim 1:

16
17
18

Garza alleges that he is intellectually disabled and therefore ineligible for execution under the Eighth and Fourteenth Amendments.[4] (Doc. 27 at 40.) Garza raised this claim during the PCR proceedings. (PCR Pet., Doc. 37-6, Ex. TTTT at 10.) The court

19
20
21

[3] Because the Court finds that Garza was not diligent in developing this information in state court, it will not address Respondents' argument that *Pinholster* precludes evidentiary development.

22
23
24
25
26
27
28

[4] In *Atkins v. Virginia*, 536 U.S. 304, 321 (2002), the Supreme Court held that the Eighth Amendment prohibits states from executing intellectually disabled persons. Arizona law defines intellectual disability as "a condition based on a mental deficit that involves significantly subaverage general intellectual functioning, existing concurrently with significant impairment in adaptive behavior, where the onset of the foregoing conditions occurred before the defendant reached the age of eighteen." A.R.S. § 13-753(K)(3). "Significantly subaverage general intellectual functioning" means a full scale intelligence quotient of 70 or lower. A.R.S. § 13-753(K)(5). The statute directs the trial court, in determining IQ, to "take into account the margin of error for the test administered." *Id.*

denied the claims without an evidentiary hearing.[5] (PCR Ruling, Doc. 39, Ex. CCCCCC at 3.)

During the PCR proceedings, Garza supported this claim with declarations from friends, family members, and teachers. (*See, e.g.*, PCR Pet., Ex's 68, 77, 103, 116, 180.) Garza also included a report by Dr. Stephen Greenspan, a psychologist who diagnosed Garza as intellectually disabled. (*See* PCR Pet., Ex. 47.)

Garza seeks expansion of the record to include declarations by high school classmates and teachers, one of his mitigation specialists at trial, Dr. Jack Potts, who conducted a pretrial Rule 11 competency screening, jail medical and psychiatric records, and Garza's elementary school records. (Doc. 54 at 19–21.) Garza also seeks an evidentiary hearing to present testimony from Dr. Greenspan and Garza's teachers, family members, and friends. (*Id.* at 21.)

Garza is not entitled to evidentiary development. First, he was not diligent in gathering this evidence, all of which was available to PCR counsel. Garza could have presented the new declarations and records in state court. *Rhoades*, 598 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241.

In addition, as Garza notes in his habeas petition, Respondents did not dispute the information presented during the PCR proceedings; specifically, the IQ scores on which the PCR court made its ruling. In the absence of disputed facts, no evidentiary hearing is required. *See Beardslee,* 358 F.3d at 585–86; *see also White v. Dingle*, 757 F.3d 750, 757 (8th Cir. 2014) ("There are no disputed facts about the information available to White's counsel at the time of trial.").

Because the facts and evidence Garza now wishes to present could "have been previously discovered through the exercise of due diligence," § 2254(e)(2), and because

---

[5] In denying the claim, the PCR court explained: "The full-scale scores of the three IQ tests given to defendant in 2003 are 81, 99 and 102, before accounting for the margin of error. Even accepting the scores reported by his PCR expert Dr. Greenspan, of a full-scale IQ of 74 and verbal IQ of 71, the Defendant does not satisfy the statutory definition of 'significantly sub average intellectual functioning,' and therefore cannot establish that he is ineligible for the death penalty." (PCR Ruling at 3.)

Garza has not alleged the existence of disputed relevant facts that would entitle him to relief under the deferential standards of the AEDPA, *Landrigan,* 550 U.S. at 474, his requests for evidentiary development on Claim 1 are denied.

### Claims 2 and 7

Garza seeks evidentiary development on numerous claims of ineffective assistance of trial counsel at both the guilt and penalty phases of trial.

Claims of ineffective assistance of counsel are governed by the principles set forth in *Strickland v. Washington*, 466 U.S. 668 674 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687–88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see Wong v. Belmontes,* 558 U.S. 15 (2009) (per curiam); *Bobby v. Van Hook,* 558 U.S. 4 (2009) (per curiam); *Cox. v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010). To satisfy *Strickland*'s first prong, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

With respect to *Strickland*'s second prong, a petitioner must affirmatively prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### Claim 2(A):

Garza alleges that trial counsel failed to present expert testimony on physical evidence to support the theory that another person was involved in the murders and that the crime scene investigation was deficient. (Doc. 27 at 66.)

The PCR court denied the claim on the merits:

> Defendant next claims that trial counsel should have called his own forensic expert at the guilt phase to critique the State's investigation and

1
2

raise doubts about the Defendant's precise role in the killings. Counsel did retain a crime scene expert, but concluded that his analysis would not have assisted the defense. This tactical decision is within counsel's purview and does not amount to ineffective assistance.

3

(PCR Ruling at 8.)

4

5

6

7

8

9

Garza seeks to expand the record to include declarations from Raymond Gieszl, a forensic consultant hired before trial (Doc. 54-2, Ex. 8); Ron Olive, an investigator hired by Garza's family before trial (*id.*, Ex. 25); Detective Donald Walsh, a retired MCSO detective who was part of the murder investigation (*id.*, Ex. 15); and Brady Anthony, a retired MCSO detective who worked with confidential informants at the time of a trial and who testified at Garza's trial (*id.*, Ex. 14).

10

11

12

13

14

15

16

17

18

19

20

21

Garza did not present the material with which he seeks to expand the record to the state court, and has not shown that he diligently attempted to do so. All four exhibits could have been obtained and submitted in support of Garza's PCR petition. *See Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241. Detectives Walsh and Anthony both testified at trial. Gieszl was interviewed by prosecutors, and PCR counsel attached a transcript to the PCR petition (Ex. 158). Trial counsel discussed Gieszl's participation in Garza's case in their declarations filed in support of Garza's PCR petition (PCR Pet., Ex's 52 and 53). Dupont recalled that Geiszl's analysis was "not very helpful" to their case. (PCR Pet., Ex. 53, ¶ 35.) PCR counsel were also aware of Ron Olive's involvement in the case. DuPont stated in his declaration that he recalled that Olive and co-counsel James Cleary "had a disagreement regarding the fact that Olive seemed to be more concerned with establishing Larry Franco's guilt than assisting our overall representation of Ruben." (*Id.*, ¶ 32.)

22

23

24

Garza was not diligent in developing these facts. He cannot satisfy 28 U.S.C. § 2254(e)(2)'s standards for obtaining either expansion of the record or an evidentiary hearing.

25

**Claim 7(A)(4):**

26

27

28

Garza alleges that he was denied effective assistance of counsel at sentencing. (Doc. 27 at 162.) Claim 7(A)(4) is divided into numerous subclaims, some of which were raised during the PCR proceedings. These include allegations that counsel failed to (b)

investigate, develop, and present evidence of Garza's Fetal Alcohol Spectrum Disorder ("FASD"); (c) investigate, develop, and present evidence of Garza's intellectual disability and low intelligence; (d) investigate, develop, and present mental-health evidence; (e) permit the State's expert to examine Garza and thereby precluded Garza's expert from testifying; and (f) present expert testimony concerning Garza's alcoholism and substance abuse. The PCR court rejected these claims on the merits. (PCR Ruling at 5, 7–8.)

**Claim 7(A)(4)(b):**

Garza alleges that trial counsel failed to investigate, develop, and present evidence of FASD. Garza asserts that counsel's performance was deficient because they never followed up with Garza's mother's "noncommittal" response when asked if she drank when pregnant with Garza and never asked others about Ms. Garza's drinking during her pregnancy. Garza raised this issue in his PCR proceedings. (PCR Pet. at 53–54.) In support of this claim, PCR counsel presented a declaration from Dr. Julian Davies, a pediatrician with expertise in prenatal alcohol/drug exposures who diagnosed Garza with alcohol-related neurodevelopmental disorder ("ARND"), a subtype of FASD. (PCR Petition, Ex. 51.) The PCR court denied relief. (PCR Ruling at 8.)

Garza requests an evidentiary hearing and expansion of the record. He seeks to expand the record to include declarations from Russell Stetler, a mitigation "standard of care" expert; a supplemental declaration from Dr. Davies; declarations from two of the mitigation specialists who worked on his defense, Pamela Siller and Dawn Whitt; a declaration from mitigation investigator Marisela Gonzalez; and a declaration from one of Garza's teachers. (Doc. 54 at 32–34.) Garza also seeks to expand the record with a note from Gonzalez dated October 21, 2002, and the transcript of a May 20, 2003, interview of Garza's mother. (*Id.* at 33.)

The Court will deny expansion of the record to include the Stetler declaration. The Court is familiar with the legal standards involved in evaluating ineffective assistance of counsel claims. "A federal court may determine that it does not require expert assistance 'to understand the legal analysis required by *Strickland.*'" *Heishman v. Ayers*, 621 F.3d

1030, 1042 (9th Cir. 2010) (quoting *Bonin v. Calderon,* 59 F.3d 815, 838 (9th Cir. 1995)).

With respect to the other documents, Garza is not entitled to expansion of the record or an evidentiary hearing because he did not present the material with which he seeks to expand the record to the state court, and has not shown that he diligently attempted to do so. All of the materials could have been obtained and submitted in support of Garza's PCR petition. *See Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241. Dr. Davies and the mitigation specialists provided declarations in support of the PCR petition. (PCR Pet., Ex's 51, 60–61.) The note from Gonzalez and the transcript of the interview of Garza's mother were available to PCR counsel. Moreover, Garza obtained declarations from several of his teachers during his post-conviction proceedings; the additional declaration could have been obtained with the exercise of diligence. (*Id.*, Ex's 68–68, 77.) Garza cannot demonstrate that he was diligent in developing this information in state court.

Garza cannot satisfy 28 U.S.C. § 2254(e)(2)'s standards for expansion of the record or an evidentiary hearing. Accordingly, his request for evidentiary development on this claim is denied.

**Claim 7(A)(4)(c):**

Garza alleges that trial counsel performed ineffectively at sentencing by failing to investigate, develop, and present evidence of Garza's intellectual disability and low intelligence. (Doc. 27 at 173.) The PCR court rejected this claim. (PCR Ruling at 8.) Garza seeks an evidentiary hearing and expansion of the record to include the declarations from Stetler and Whitt. (Doc. 54 at 34–35.) The requests are denied for the reasons discussed with respect to Claim 7(A)(4)(b).

**Claim 7(A)(4)(d):**

Garza alleges that his trial counsel were ineffective when they failed to investigate and present mental health evidence. (Doc. 27 at 180.) This claim was raised and rejected on the merits in state court. (PCR Ruling at 8.)

Garza seeks to depose Dr. Jamie Kennedy, a psychologist who treated Garza in 2012 and 2013. (Doc. 54 at 35.) He also seeks his complete medical and mental health records, from 2012 to the present, from Corizon Health, the prison health-care provider. (*Id.*) Garza is not entitled to this discovery because he has not shown good cause under Rule 6(a). Records concerning Garza's mental health and treatment from 2012 on are not relevant to his claim that trial counsel were ineffective in 2004.

Garza seeks to expand the record to include the declarations from Stetler, Siller, Gonzalez, and Whitt. For the reasons already discussed, these requests are denied. He also seeks to expand the record with declarations from Dr. Potts, who performed the competency evaluation before Garza's trial and now states that he intended his comment about Garza's possible false confession as a "red flag" for trial counsel. (Doc. 54-2, Ex. 6.) This information could have been obtained by PCR counsel and presented in state court. *See Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241.

Garza seeks to expand the record with a declaration from Dr. Barry Morenz, an expert retained during the PCR proceedings who diagnosed Garza in 2012 with depressive disorder NOS and personality disorder NOS with schizotypal and borderline features. (PCR Pet., Ex. 49.) Dr. Morenz now states that if he had reviewed Garza's 2012 and 2013 mental health records, which detail several "psychotic episodes," he would have diagnosed Garza with schizotypal personality disorder or potentially schizophrenia. (Doc. 54-2, Ex. 7.) Garza also seeks to include a declaration from PCR counsel Phalen, who states that he does not recall whether he informed Dr. Morenz of Garza's psychiatric episodes or provided him the medical records. (Doc. 54-2, Ex. 29.) Finally, Garza seeks to expand the record with Garza's medical records from Corizon and with a report by Dr. Gregory Meyer, a psychologist who examined Garza in 2015 and diagnosed him with schizophrenia. (Doc. 54-3, Ex. 32; Doc. 54-1, Ex. 4.)

The Court will deny expansion of the record with respect to these materials. At issue in these claims is trial counsel's performance at sentencing in 2004. Materials documenting Garza's mental condition eight or 10 years later is not relevant to that determination. In addition, Garza had an opportunity during the PCR proceedings to

develop evidence that he suffers from schizophrenia. Again, his failure to do so constitutes a lack of diligence which precludes the Court from expanding the record. 38 U.S.C. § 2254(e)(2); *see Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241.

**Claim 7(A)(4)(e):**

Garza argues that his trial counsel were ineffective when they refused to permit the State's expert to examine Garza and thereby precluded Garza's expert from testifying.[6] (Doc. 27 at 184.) Garza seeks expansion of the record to include declarations by Stetler and Whitt. (Doc. 54 at 38–39.) He also seeks an evidentiary hearing. This claim was raised and rejected on the merits in state court. (PCR Ruling at 8.) The requests are denied for the reasons discussed with respect to Claim 7(A)(4)(b) and (c).

**Claim 7(A)(4)(f):**

Garza argues that his trial counsel were ineffective when they failed to investigate and present evidence of Garza's alcoholism and substance abuse. (Doc. 27 at 187.) Garza seeks an evidentiary hearing and expansion of the record to include declarations by Stetler and Whitt. (Doc. 54 at 39.) This claim was raised and rejected on the merits in state court. (PCR Ruling at 8.) The requests are denied for the reasons discussed with respect to Claim 7(A)(4)(b), (c), and (e).

**Claim 8(D)(2):**

Garza alleges that the trial court's errors during the mitigation phase violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. (Doc. 27 at 228.) He seeks to expand the record to include Exhibit 38, victim-impact photographs introduced at sentencing. (Doc. 54 at 46.) Respondents do not object (Doc. 64 at 50), and the request will be granted.

---

[6] Defense counsel retained Dr. Thomas Reidy, a psychologist to offer opinions in mitigation. The court held discussions with the parties about *Phillips v. Araneta*, 208 Ariz. 280, 93 P.3d 480 (2004), which permits a trial court to preclude a capital defendant's presentation of mental health expert evidence in mitigation during the penalty phase of a capital murder prosecution as a sanction for a defendant's refusal to submit to an examination by a prosecution expert. The defense indicated that they would not cooperate with an evaluation by the State's expert. The State moved to preclude presentation of Garza's expert based on *Phillips*, and the court granted the motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Claims 11–13**

These claims, arising from allegations of jury misconduct, were presented during the PCR proceedings and denied on procedural grounds and alternatively on the merits. For the reasons discussed next, Garza is not entitled to evidentiary development.

**Claim 11:**

Garza alleges that juror misconduct and tampering deprived him of his right to a fair and impartial jury. The claim consists of several subclaims. Garza seeks evidentiary development on three of them: 11(A), (B), and (C).

In Claim 11(A), Garza argues that he was deprived of a fair and impartial trial because jurors Geno Chisolm and Vic Currier provided false answers about their criminal histories on their juror questionnaires. (Doc. 27 at 265.) In Claim 11(B), Garza argues that he was deprived of a fair and impartial trial because the jurors engaged in "quid pro quo bargaining." (*Id.* at 269–72.)  In Claim 11(C), Garza argues that he was deprived of a fair trial because Currier believed that he was being intimidated by Garza's family and friends. (*Id.* at 272.)

Garza seeks to expand the record to include a declaration from Chisolm (Exhibit 17),[7] seeks to depose all jurors who deliberated on his trial, and requests an evidentiary hearing to present the testimony of the jurors and other witnesses. (Doc. 54 at 47–49.)

Garza raised these claims during the PCR proceedings. The PCR court, citing Ariz. R. Crim. P. 32.2(a), found the claims precluded because they could have been raised on appeal.[8] This procedural ruling was both independent and adequate to preclude federal review of these subclaims. *See Stewart v. Smith*, 536 U.S. 856, 860–61 (2002); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998); *Carriger v. Lewis*, 971 F.2d 329,

---

[7] The Court denied Respondents' motion to strike Exhibit 17, but indicated that it would not consider any statements concerning the jurors' deliberative process. (Doc. 65.)

[8] The PCR court also considered the merits of the claims when ruling on Garza's claims of ineffective assistance of appellate counsel.

333 (9th Cir. 1992). These subclaims are therefore procedurally defaulted. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005).[9]

Even if Garza could overcome the procedural default of the claims, he would not be entitled to evidentiary development. Garza is not entitled to expansion of the record or an evidentiary hearing because he did not present the material with which he seeks to expand the record to the state court, and has not shown that he diligently attempted to do so. For example, Exhibit 17 could have been obtained and submitted in support of Garza's PCR petition. *See Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241. During the PCR proceedings, Garza's counsel contacted jurors Chisolm and Currier, and declarations from the post-conviction investigator, regarding his contact with both jurors, and a declaration from Currier were filed in support of Garza's PCR petition. (PCR Pet., Ex's 62, 119, 173.) PCR counsel also presented documents detailing Chisolm's criminal record. (*Id.*, Ex. 62.) Finally, PCR counsel presented a declaration from juror Kathryn Mason, dated August 28, 2012, and the transcript of an interview trial counsel conducted with Mason in 2004; these documents included her statements on the "vote trading" issue. (*Id.*, Ex's 118, 157.) Garza cannot demonstrate that he was diligent in developing this information in state court.

The facts and evidence Petitioner now wishes to present could "have been previously discovered through the exercise of due diligence," § 2254(e)(2), and because Petitioner has not alleged the existence of disputed relevant facts that would entitle him to relief under the deferential standards of the AEDPA, *Landrigan,* 550 U.S. at 474, his requests for evidentiary development are denied.

Moreover, an evidentiary hearing is not required because the claims can be resolved by reference to the state court record. *Totten*, 137 F.3d at 1176; *Landrigan*, 550 U.S. at 474.

---

[9] The PCR court's alternative finding that Garza failed to state a colorable claim for relief on the issue does not vitiate this procedural bar to federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Comer v. Schriro*, 480 F.3d 960, 964 & n. 6 (9th Cir. 2007).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Finally, with respect to Claim 11(B), the PCR court's denial of the claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). "[T]he United States Supreme Court has never held that a jury violates a criminal defendant's constitutional rights by reaching a compromise verdict that is supported by the evidence, and such a conclusion does not flow from the Court's clearly established law." *Zhuk v. McDonald*, No. CIV S-09-3073 MCE, 2011 WL 3925090, at *9 (E.D. Cal. Sept. 7, 2011), *aff'd*, 584 F.App'x 833 (9th Cir. 2014); *see United States v. Marques*, 600F.2d 742,747 (9th Cir. 1979) (noting "the compromise verdict, if there was one, was reached by the jurors on their own" and "[w]e therefore reject appellants' contention that because the verdict was allegedly compromised, it should be reversed."); *United States v. Green*, 523 F.2d 229, 235–36 (2nd Cir. 1975) ("Evidence that the jurors on their own agreed to a compromise verdict does not warrant a new trial."). Under *Pinholster*, Garza is not entitled to evidentiary development on Claim 11(B). 563 U.S. at 181.

**Claim 12:**

Garza alleges that trial counsel were ineffective when they failed to move for a new trial based on juror quid pro quo bargaining. (Doc. 27 at 265.) Garza seeks the same evidentiary development as he does for Claim 11(B) and intends to call trial counsel at an evidentiary hearing. (Doc. 54 at 49.)

This claim was rejected on the merits in state court. (PCR Ruling at 9–10.) For the reasons discussed above, trial counsel did not perform ineffectively under *Strickland* by failing to raise a claim based on juror bargaining. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (explaining counsel is not ineffective if they fail to raise a meritless motion). The PCR court's decision was neither contrary to nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Therefore, under *Pinholster*, Garza is not entitled to evidentiary development. 563 U.S. at 181.

**Claim 13:**

Garza alleges that the State deprived him of his right to a fair and impartial jury by failing to disclose the prosecutor's prior interactions with a juror. (Doc. 27 at 270.) Garza

seeks to depose the prosecutor, Mark Barry, to expand the record with the declaration from juror Chisolm; he also requests an evidentiary hearing where he would present testimony from Chisolm and Barry. (Doc. 54 at 50.) Garza raised this claim during the PCR proceedings. (PCR Pet. at 73.) The court found the claim precluded under Rule 32.2(a) because it could have been raised on appeal. (PCR Ruling at 2–3.) This procedural ruling was both independent and adequate to preclude federal review of the claim. *See Smith*, 536 U.S. at 860–61.

Even if Garza could overcome the procedural default of the claim, he would not be entitled to evidentiary development. As already noted, PCR counsel was aware of this claim and presented a declaration from his investigator, who interviewed Chisolm about his criminal record. (PCR Petition, Ex. 62.) The failure to develop the claim further resulted from a lack of diligence. 28 U.S.C. § 2254(e)(2); *see Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241.

**Claim 14:**

Garza alleges that appellate counsel, Richard Gierloff, performed at a constitutionally ineffective level. (Doc. 27 at 271.) Claim 14 includes four subclaims, alleging that appellate counsel failed to argue that the mitigating circumstances were sufficient to merit a life sentence, failed to include a statement of facts in the appellate brief, failed to raise several meritorious issues, and failed to file a timely and sufficient motion for reconsideration. With the exception of one of the subclaims, Claim 14 was denied on the merits by the PCR court. (PCR Ruling at 4–5.)

During the PCR proceedings, Garza supported this claim with the transcript of Gierloff's oral argument; e-mails between Gierloff and others; e-mails regarding Gierloff's drafts; memoranda between Gierloff and his law clerk Carissa Jakobe; and declarations from Jakobe, an expert in capital appeals, a trial attorney, and a trial mitigation investigator who attempted to assist Gierloff. (*See, e.g.*, PCR Pet., Ex's 32, 39-44, 46, 52, 56, 60, 63, 63a–f, 160.)

Garza now seeks an evidentiary hearing where he intends to call Gierloff, Jakobe, a standard-of-care expert, and other witnesses. (Doc. 54 at 54.) All of this evidence was

available and could have been presented during the PCR proceedings. The failure to do resulted from a lack of diligence. 28 U.S.C. § 2254(e)(2); *see Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241.

Moreover, additional evidentiary development is not necessary to resolve this claim. *See Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986) (explaining "it is the exceptional case" where a claim of appellate ineffective assistance "could not be resolved on an examination of the record alone"). The record is complete with respect to appellate counsel's performance.

**Claim 18:**

Garza alleges that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding material exculpatory evidence regarding Larry Franco. (Doc. 27 at 325.) Garza contends that the State violated *Brady* when it "failed to disclose records of Larry Franco's work as a criminal informant for law enforcement," because "[c]entral to the defense's case at trial was its theory that police were overlooking Franco as a suspect because of his work as a confidential informant for various state law enforcement agencies." (*Id.* at 326.)

Garza seeks discovery of Franco's activities as a criminal informant ("CI"); expansion of the record to include Exhibit 14, a declaration from Brady Anthony; and an evidentiary hearing where he would present testimony from Anthony, prosecutors Barry and George Gialketsis, and the case agent, retired Detective George Sanchez. (Doc. 54 at 52–53.)

This claim was raised on appeal. Garza alleged that the State improperly withheld evidence about Larry Franco's history as a CI for MCSO and the Arizona Department of Public Safety ("DPS"). The Arizona Supreme Court rejected the claim, explaining:

> Garza has not demonstrated that any MCSO records were withheld. After an MCSO deputy testified that forms concerning Larry [Franco's] service as a CI in 1994 were not in previously disclosed materials, Garza asked the trial court to order disclosure of all MCSO files. The State replied that everything had already been disclosed and suggested that the missing records may have been purged. The trial court then ordered the State to ensure complete disclosure. The MCSO files were never again discussed on the record. Thus, nothing in the record indicates that additional MCSO documents regarding Larry exist.

1

2
. . . .

3
       Larry served as a CI for DPS in undercover drug operations in the early 1990s. Garza moved before trial for discovery of any DPS records on Larry. The superior court denied the motion. We review such discovery rulings for abuse of discretion.

4

5
       The superior court did not abuse its discretion here. Larry's relationship with DPS had ended years before the murders, and Garza made no showing that DPS was involved in the investigation of the murders. In any event, Garza established through the testimony of a DPS detective that Larry was an informant during the early 1990s.

6

7
*Garza*, 216 Ariz. at 65, 163 P.3d at 1015 (citations omitted). This decision was neither

8
contrary to nor an unreasonable application of clearly-established federal law, nor was it

9
based on an unreasonable determination of the facts.

10
       Under *Brady*, the government has a constitutional obligation to disclose material,

11
favorable information to the defense. *Brady* is violated where (1) the evidence in question

12
was favorable to the accused, (2) the government willfully or inadvertently suppressed

13
the evidence, and (3) prejudice resulted from the suppression (i.e., the evidence was

14
"material"). *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Banks v. Dretke*, 540

15
U.S. 668, 691 (2004). Evidence is material for *Brady* purposes "if there is a reasonable

16
probability that, had the evidence been disclosed to the defense, the result of the

17
proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)

18
(quoting *United States v. Bagley*, 473 U.S. 667, 682 (1982)). "In other words, favorable

19
evidence is subject to constitutionally mandated disclosure when it 'could reasonably be

20
taken to put the whole case in such a different light as to undermine confidence in the

21
verdict.'" *Cone v. Bell*, 556 U.S. 449, 470 (2009) (quoting *Kyles,* 514 U.S. at 435). The

22
duty to disclose includes impeachment as well as exculpatory material. *Bagley*, 473 U.S. at 676.

23
       Garza's claim does not satisfy *Brady* because it is based on speculation that the

24
MCSO records exist and that the information is material. "The mere possibility that an

25
item of undisclosed information might have helped the defense, or might have affected

26
the outcome of the trial, does not establish 'materiality' in the constitutional sense."

27
*United States v. Agurs*, 427 U.S. 97, 109–10 (1976); *see Runningeagle v. Ryan*, 686 F.3d

28

758, 769 (9th Cir. 2012); *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005); *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (rejecting a *Brady* claim in part because the petitioner's arguments were speculative); *United States v. Abonce–Barrera*, 257 F.3d 959, 970 (9th Cir. 2001) (finding that evidence was not material under *Brady* where the defendant had only "a hunch" that the evidence would be useful).

In addition, Garza has failed to establish that the State suppressed Franco's DPS CI records. The trial court found that the DPS records were not relevant and denied Garza's request for them. In Garza's PCR proceedings, the State provided Franco's DPS records to the court for an *in camera* review, and the court found "no information or material relevant to the case at hand." (Doc. 37-5, Ex. AAA.)

The Arizona Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable application of the facts. 28 U.S.C. § 2254(d). Therefore, under *Pinholster*, Garza is not entitled to evidentiary development. 563 U.S. at 181. Claim 18 is also denied on the merits.

**Claim 19:**

Garza alleges that he is actually innocent because Franco was the actual shooter, and legally innocent of the death penalty due to his intellectual disability. (Doc. 27 at 328.) He seeks discovery, expansion of the record, and an evidentiary hearing. (Doc. 54 at 53–54.)

This claim was raised and rejected on the merits by the PCR court in state court. (PCR Ruling at 10.) Respondents contend that evidentiary development is precluded by *Pinholster*. They also argue that the claim is meritless and noncognizable.

In order to overcome *Pinholster*'s prohibition on new evidence, Claim 19 has to satisfy 28 U.S.C. § 2254(d). It does not. The PCR decision denying this claim was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The Supreme Court has not recognized actual innocence as a stand-alone habeas claim. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence

- 23 -

based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) ("Whether such a federal right exists is an open question.") (citing *House v. Bell*, 547 U.S. 518, 554–555 (2006)).

Under *Pinholster*, therefore, Garza is not entitled to evidentiary development. 563 U.S. at 181. Claim 19 is also denied on the merits.

**Claims 27 and 35:**

The Arizona Supreme Court rejected these claims on direct appeal. *Garza*, 216 Ariz. at 74, 163 P.3d at 1024 (Appendix). Garza now seeks documents and depositions from the Maricopa County Attorney's Office and discovery from the county attorney's office for every Arizona county. (Doc. 54 at 58–59.)

In Claim 27, Garza alleges that Arizona's capital-sentencing scheme violates the Eighth and Fourteenth Amendments because it does not sufficiently channel the discretion of the sentencing authority. (Doc. 27 at 375.) The Ninth Circuit has rejected the contention that Arizona's death penalty statute is unconstitutional because it "does not properly narrow the class of death penalty recipients." *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir. 1998).

In Claim 35, Garza alleges that Arizona's capital-sentencing scheme violates the Eighth and Fourteenth Amendments because it affords the prosecutor unbridled discretion to seek the death penalty. (Doc. 27 at 386.) Prosecutors have wide discretion in deciding whether to seek the death penalty. *See McCleskey v. Kemp*, 481 U.S. 279, 296–97 (1987); *Gregg v. Georgia*, 428 U.S. 153, 199 (1976). The Ninth Circuit has rejected the argument that Arizona's death penalty statute is constitutionally infirm because "the prosecutor can decide whether to seek the death penalty." *Smith*, 140 F.3d at 1272.

The decision of the Arizona Supreme Court denying these claims was neither contrary to nor an unreasonable application of clearly established federal law. Garza is not entitled to evidentiary development, and the claims will be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Defaulted Claims**

Garza did not present the following claims in state court: Claims 2(C), 2(D), 2(G), 7(A)(4)(a), (h), (i), (l), (m), and (n), 23, 24, 25, and 37. The claims are procedurally defaulted. Petitioner contends that the default of the ineffective assistance of trial counsel claims, as well as Claims 23 and 24, is excused under *Martinez* by the ineffective assistance of PCR counsel. The Court disagrees.

**Claim 2(C):**

Garza alleges that trial counsel performed ineffectively by failing to call Larry Franco as a witness. (Doc. 27 at 74–76.) Garza seeks expansion of the record to include a declaration from an alternate juror (Doc. 54-2, Ex. 18) and Larry Franco's arrest records. (Doc. 54-7, Ex. 33.) Garza also seeks an evidentiary hearing. (*Id.* at 22.) Respondents assert that this claim is unexhausted and procedurally defaulted because Garza discussed the issue only in a footnote in his PCR petition. (Doc. 37 at 223; *see* PCR Pet. at 48, n.39.) Garza maintains that he exhausted the claim. (Doc. 44 at 40.) Whether or not the footnote was sufficient to raise the claim in the PCR petition,[10] Garza did not include the claim in his Petition for Review, and it is unexhausted. (Doc. 39, Ex. HHHHHH.)

In Exhibit 18, alternate juror Dena Fisher states that she found it peculiar that Franco was never called as a witness and thought Franco should have been on trial with Garza. (Doc. 54-2, Ex.18.) This juror declaration cannot be considered as evidence in support of Garza's ineffective assistance of counsel claim.

Juror testimony cannot be used to impeach a verdict unless "extrinsic influence or relationships have tainted the deliberations." *Tanner v. United States*, 483 U.S. 107, 120 (1987). Rule 606(b)(1) of the Federal Rules of Evidence prohibits juror testimony "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). Accordingly, "[t]he court

---

[10]  In Arizona, to fairly present and exhaust a claim, a capital petitioner must present his allegations not only to the PCR court but also to the Arizona Supreme Court upon denial of relief. *See O'Sullivan v. Boerkel*, 526 U.S. 838, 848 (1999); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999) (per curiam) (capital petitioners must seek review in Arizona Supreme Court to exhaust claims).

may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Id.* The only exceptions include questions of whether "extraneous prejudicial information" or "outside influence" was improperly brought before the jury. Fed. R. Evid. 606(b)(2).

Juror affidavits may not be considered under Rule 606(b) in support of ineffective assistance of counsel claims. *See Brown v. United States*, 720 F.3d 1316, 1337 (11th Cir. 2013) (juror's affidavit, swearing that additional mitigation evidence gathered during the postconviction process might have had an impact on the jury's penalty phase deliberations, was not competent evidence); *Hoffner v. Bradshaw*, 622 F.3d 487, 501 (6th Cir. 2010) (juror's affidavit stating that the defendant's lack of emotion was a factor in voting to recommend the death penalty was properly excluded from consideration); *Williams v. Collins*, 16 F.3d 626, 636 (5th Cir. 1994) (district court did not abuse its discretion in excluding testimony from jurors as to whether their deliberations would have been different if they had been presented with additional mitigating evidence); *Coleman v. Sisto*, No. 2:09-CV-0020-DAD, 2012 WL 6020095, at *23 n.13 (E.D. Cal. Dec. 3, 2012) ("Under [Rule 606(b)], these post-verdict juror affidavits cannot be considered as evidence in support of petitioner's ineffective assistance of counsel claim.").

With respect to Exhibit 33, Garza could have discovered and presented Franco's arrest records during the PCR proceedings. *See Williams*, 529 U.S. at 432. He cannot demonstrate that he was diligent in developing this information in state court. 28 U.S.C. § 2254(e)(2); *see Rhoades*, 398 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241.

**Claims 2(D) and (G):**

In Claim 2(D), Garza alleges that trial counsel failed to support their theory that Franco was the perpetrator with "readily available" evidence. (Doc. 27 at 76.) Garza seeks discovery in the form of a deposition of Ignacio Villa, a close friend of Franco's at the time of the crime. (Doc. 54 at 30.) Garza seeks expansion of the record to include several declarations by people who knew Franco, a trial investigator, and PCR counsel Phalen. (*Id.* at 30–32; Doc. 54-2, Ex's 9–11, 13, 25, and 29.)

1    In Claim 2(G), Garza alleges that trial counsel were ineffective when they failed to

2  challenge the State's firearms examiner by arguing that he had no scientific basis for his

3  opinions. (Doc. 27 at 82.) Garza seeks expansion of the record to include declarations by

4  a forensic metallurgist and a forensic expert consulted before trial. (Doc. 54 at 33; Doc.

5  54-1, Ex. 1; 54-2, Ex. 8.)

6    These claims are unexhausted and procedurally defaulted. Garza argues that the

7  default is excused under *Martinez* because PCR counsel Phalen performed at a

8  constitutionally ineffective level in failing to raise the claims in state court. Garza seeks

9  an evidentiary hearing on the issue of cause and prejudice.

10    In a declaration from June 2016, Phalen states that he does not recall why he did

11  not include a claim in the PCR petition alleging that trial counsel performed ineffectively

12  by failing to present evidence of Franco's involvement in the crime. (Doc. 54-2, Ex. 29 at

13  ¶ 6.)

14    *Pinholster* and § 2254(e)(2) do not categorically bar Garza from obtaining a

15  hearing or from presenting extra-record evidence to establish cause and prejudice for the

16  procedural default. *Woods v. Sinclair*, 764 F.3d 1109, 1138 (9th Cir. 2014) (citing

17  *Dickens v. Ryan*, 740 F.3d 1302, 1320–22 (9th Cir. 2014); *Detrich v. Ryan*, 740 F.3d

18  1237, 1247 (9th Cir. 2013)). With respect to Claims 2(D) and (G), however, the record is

19  sufficient to resolve the cause and prejudice issue under *Martinez*. *See Landrigan*, 550

20  U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise

21  precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

22  Garza's allegations of ineffective assistance of trial counsel are not "substantial"

23  under *Martinez*.

24    An underlying claim is "insubstantial" under *Martinez* if it "does not have any

25  merit or . . . is wholly without factual support." *Martinez*, 566 U.S. at 15–16.

26  Accordingly, to determine whether Garza has established cause to excuse the procedural

27  default, the court conducts a preliminary assessment of his underlying claims. *Smith v.

28  Ryan*, 823 F.3d 1270, 1296 (9th Cir. 2016). The Court has undertaken such a preliminary

assessment and determined that Claims 2(D) and (G) are not substantial.

1
2
3
4
5
6

In Claim 2(D), Garza alleges that his trial counsel failed to "present a full picture of Franco at trial with readily available evidence" by failing to call Franco's ex-wife Sally Gerberich during the guilt phase and by failing to solicit testimony from Garza's parents that Detective Sanchez allegedly told them that "he believed Larry Franco was responsible." (Doc. 27 at 77–78.) Garza asserts that this evidence "would have strengthened Garza's main defense that Larry Franco was the true perpetrator and the police ignored evidence against him." (*Id.* at 78.)

7
8
9
10
11
12

Trial counsel's failure to present this evidence was not prejudicial under *Strickland*. First, there was overwhelming evidence that Garza committed the murders. He confessed to the shootings on multiple occasions. His blood was found at the scene. He matched the description provided by Jennifer Farley, an eyewitness to the shooting. Presenting testimony suggesting that Franco also could have been involved in the murders does nothing to discount that evidence.

13
14
15
16
17
18
19
20
21
22
23
24
25

Next, as Respondents note, the new evidence Garza cites is largely cumulative to that presented at trial. *See Babbitt v. Calderon*, 151 F.3d 1170, 1176 (9th Cir. 1998) (counsel not ineffective for failing to call witness whose testimony would have been "largely cumulative of the evidence actually presented"). Throughout the trial, Garza's counsel presented the theory that Franco was the real perpetrator and that the police ignored evidence against him because he was a CI. For example, counsel presented testimony from Robert Fertig, Franco's friend, that several months before the murder Franco asked him to make a silencer to kill his wife. (RT 8/19/04 at 44.) Officer McCarthy testified that Franco believed that Ellen, Jennifer, and Lance Rush were engaging in "kinky sex," and that Franco thought Jennifer was the person coming between him and Ellen. (RT 8/16/04 at 138–39; RT 8/17/04 at 52.) Jennifer testified that Franco had threatened to kill Ellen's parents if she left him. (RT 8/11/04 at 141–42.) In addition, several of the State's witnesses testified extensively about Franco's role as a CI. (RT 7/12/04 at 61–128.)

26
27
28

Claim 2(D) is not substantial. Therefore, its procedural default cannot be excused under *Martinez*. 566 U.S. at 16. The claim is defaulted and procedurally barred from federal review. Evidentiary development is denied.

In Claim 2(G), Garza alleges that trial counsel performed ineffectively by failing competently challenge the testimony of the State's firearms examiner, James Serpa. (Doc. 27 at 82–84.) Serpa examined the six shell casings found at the scene and four firearms, including Garza's gun. (RT 7/8/04 at 32–34.)   Based on his examination and testing, Serpa concluded "that those six expended cartridge cases were fired [from Garza's gun] to the exclusion of all other firearms" and that the cases "were identified as having been fired" from Garza's gun. (*Id*. at 46–47, 52, 57, 60.)

In support of his claim that trial counsel performed ineffectively in failing to challenge this testimony, Garza seeks to expand the record with the declaration of William Tobin, a forensic metallurgist. (Doc. 54 at 28.) According to Tobin, the firearms identification performed by Serpa was without scientific foundation and individuation, or conclusively identifying a weapon as the one that fired a specific bullet or cartridge case, is not possible using toolmarks analysis. (Doc. 54-1, Ex. 1.)

There is no reasonable probability of a different outcome if trial counsel had challenged Serpa on the scientific validity of toolmarks analysis. Garza confessed to the shootings. The shell casings found at the scene were, at the very least, consistent with being fired from his gun. Evidence that toolmarks analysis is not an exact science, and that, contrary to Serpa's testimony, individuation is not possible, does nothing to counter this evidence of Garza's guilt.

Because Garza cannot show prejudice under *Strickland*, Claim 2(D) is not substantial. Therefore, its procedural default cannot be excused under *Martinez*. 566 U.S. at 16. The claim is defaulted and procedurally barred from federal review. Evidentiary development is denied.

**Claim 7(A)(4):**

Garza seeks evidentiary development with respect to the following claims of ineffective assistance of counsel at sentencing, which were not raised in state court: (a)

1   trial counsel provide an adequate social history to any expert;[11] (h) failed to investigate

2   and present evidence regarding the adolescent brain; (i) failed to fully investigate,

3   develop, and present evidence of Garza's executive-functioning deficits; (l) failed to

4   make clear that Larry Franco was never charged with or convicted of a crime related to

5   the murders; (m) failed to present evidence that Garza felt threatened on the night of the

6   murders; (n) failed to adequately prepare mitigation witnesses.

7       As explained below, these claims remain procedurally defaulted and barred from

    federal review. Garza's requests for evidentiary development are therefore denied.

8       Garza alleges that PCR counsel performed ineffectively by failing to raise these

9   claims and therefore their default is excused under *Martinez*. The Court disagrees that

10  PCR counsel's performance was ineffective.

11      To show that counsel was ineffective, Garza must demonstrate that PCR counsel's

12  failure to raise the ineffective assistance of trial counsel claims was "so serious that

13  counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

14  Amendment." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (quoting *Strickland*,

15  466 U.S. at 687)); *see Murray (Roger)*, 746 F.3d 418, 457 (2015). "Counsel is not

16  necessarily ineffective for failing to raise even a nonfrivolous claim." *Id.* (citing *Knowles*

17  *v. Mirzayance,* 556 U.S. 111, 127 (2009)). "Accordingly, a PCR counsel would not be

18  ineffective for failure to raise an ineffective assistance of counsel claim with respect to

19  trial counsel who was not constitutionally ineffective." *Sexton*, 679 F.3d at 1157.

20      Phalen, along with Eric Sonnenschein and Courtney Forrest of Covington &

21  Burling LLP in Washington, D.C. represented Garza in his PCR proceedings. Counsel

22  filed an 80-page PCR petition, raising 10 claims and numerous subclaims. Together with

23  the petition, counsel filed "183 exhibits that amounted to 6,542 pages of documents and

24

25      [11] The Court agrees with Respondents that Garza did not present this specific
    claim of ineffective assistance during the PCR proceedings. *See Moormann v. Schriro,*
26  426 F.3d 1044, 1056 (9th Cir. 2005) (explaining that each "unrelated alleged instance [ ]
    of counsel's ineffectiveness" is a separate claim for purposes of exhaustion).

27

28

two video exhibits, including more than a dozen medical, psychiatric, substance-abuse, intelligence, and legal expert reports and declarations." (Doc. 27 at 33.)

PCR counsel raised a claim of ineffective assistance of counsel at sentencing. (PCR Pet. at 49–61.) He alleged five instances in which trial counsel "failed to develop and present all mitigating evidence," including evidence regarding mental retardation or low intelligence, fetal alcohol spectrum disorder, gullibility, alcoholism and substance abuse, and mental health. In support of these claims, PCR counsel retained Dr. Greenspan, who opined that Garza was mentally retarded (*id.*, Ex. 47); Dr. Morenz, who diagnosed Garza with depressive disorder NOS and personality disorder NOS with schizotypal and borderline features (*id.*, Ex. 49); Roger Nelson, who determined that Garza was genetically predisposed to alcoholism and was an active alcoholic (*id.*, Ex. 50); and Dr. Davies, who diagnosed Garza with ARND (*id.*, Ex. 51). PCR counsel also included declarations from experienced capital attorneys who attested to deficiencies in trial and appellate counsel's performance. (*Id.*, Ex's 45, 46.)

With respect to his unexhausted claims of ineffective assistance of counsel at sentencing, Garza states that pursuant to *Martinez* he "will demonstrate at an evidentiary hearing that the failure to exhaust is attributable to ineffective assistance by Garza's post-conviction counsel." (*See* Doc. 27 at 76.) This is not sufficient to carry Garza's burden of demonstrating that his PCR counsel performed ineffectively. *See Clabourne*, 745 F.3d at 377; *Pizzuto v. Ramirez*, 783 F.3d 1171, 1178–79 (9th Cir. 2015).

Garza also presents a declaration from PCR counsel Phalen, who does not recall why these particular claims of ineffective assistance of counsel at sentencing were not raised. (Doc. 54-2, Ex. 29.) This is not sufficient to challenge "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see Greiner v. Wells*, 417 F.3d 305, 326 (2nd Cir. 2005); *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999).

Garza offers no support for the proposition that PCR counsel's performance fell below an objective standard of reasonableness or that there was a reasonable probability of a different result if PCR counsel performed competently.  The ineffective assistance of

counsel claims PCR counsel did not raise were not stronger than the claims they did raise. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) (explaining that the presumption of effective assistance of counsel can ordinarily be overcome "only when ignored issues are clearly stronger than those presented") (quoting *Gray*, 800 F.2d at 646). Garza has not shown a reasonable probability that the outcome of the PCR proceedings would have been different if the additional claims had been raised.

Because PCR counsel did not perform ineffectively, these claims remain procedurally defaulted and are barred from federal review. *Martinez*, 566 U.S. at 16. Accordingly, Garza's requests for evidentiary development are denied.

**Claims 23 and 24:**

In Claim 23, Garza alleges that the Eighth Amendment prohibits his execution due to his age and lack of brain development at the time of the crime. (Doc. 27 at 352.) In Claim 24, Garza alleges that his execution violates the Eighth and Fourteenth Amendments because he has a serious mental illness. (*Id.* at 358.) Garza seeks to expand the record with expert reports and medical records, and a declaration from PCR counsel; he seeks discovery of his complete medical and mental health records from the ADOC; and he requests an evidentiary hearing. (Doc. 54 at 55–57.)

Garza did not raise these claims in state court. He contends that their default is excused under *Martinez* by the ineffective assistance of PCR counsel. (*Id.* at 55–56.)

*Martinez* held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 8. *Martinez* applies only to ineffective assistance of trial or, in the Ninth Circuit, appellate counsel. It has not been expanded to other types of claims. *Pizzuto*, 783 F.3d at 1177 (explaining that the Ninth Circuit has "not allowed petitioners to substantially expand the scope of *Martinez* beyond the circumstances present in *Martinez*"); *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) (denying petitioner's claim that *Martinez* permitted the resuscitation of a procedurally defaulted *Brady* claim, holding that only the Supreme Court could expand the application of *Martinez* to other areas).

1

2

Claims 23 and 24 remain defaulted and barred from federal review. Evidentiary development is denied.

3

**Claim 25:**

4

5

6

7

Garza alleges that his execution, after he has spent nearly eleven years on death row, violates the Eighth and Fourteenth Amendments. (Doc. 27 at 370.) He seeks documents and depositions from the Arizona Department of Corrections and the Maricopa County Madison Street Jail. (Doc. 54 at 57–58.) Garza did not present this claim in state court. The claim is without merit and discovery will be denied.

8

9

10

11

12

13

14

15

16

17

The United States Supreme Court has never held that lengthy incarceration prior to execution amounts to cruel and unusual punishment. *See Lackey v. Texas*, 514 U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not been addressed); *Thompson v. McNeil*, 556 U.S. 1114 (2009) (mem.) (Stevens, J. & Breyer, J., dissenting from denial of certiorari; Thomas, J., concurring, discussing *Lackey* issue). Circuit courts, including the Ninth Circuit, have also held that prolonged incarceration under a sentence of death does not violate the Eighth Amendment. *See McKenzie v. Day*, 57 F.3d 1493, 1493–94 (9th Cir. 1995) (en banc); *White v. Johnson*, 79 F.3d 432, 438 (5th Cir. 1996); *Stafford v. Ward*, 59 F.3d 1025, 1028 (10th Cir. 1995).

18

**Claim 37:**

19

20

Garza alleges that will be denied a fair clemency process, in violation of the Eighth and Fourteenth Amendments. (Doc. 27 at 388.) He seeks unspecified discovery. (Do. 54 at 59.)

21

22

23

24

25

26

This claim is not cognizable on federal habeas review. Habeas relief can only be granted on claims that a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner's challenge to state clemency procedures and proceedings does not represent an attack on his detention and thus does not constitute a proper ground for relief. *See Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam); *see also Woratzeck v. Stewart*, 118 F.3d 648, 653 (9th

27

28

1
2

Cir. 1997) (per curiam) (explaining that clemency claims are not cognizable under federal habeas law).

3

Garza is not entitled to discovery on this non-cognizable claim.

**III.    CONCLUSION**

4
5
6
7
8

With respect to his exhausted claims, the evidence Garza seek to present in this court was available and could have been presented in state court.  28 U.S.C. § 2254(e)(2). With respect to the unexhausted claims, Garza has not shown that PCR counsel performed ineffectively. *Martinez*, 566 U.S. at 14. Other claims are meritless or non-cognizable.  Those claims will be denied.

9

Accordingly,

10
11

**IT IS ORDERED DENYING** Petitioner's motion for evidentiary development (Doc. 54) as set forth herein.

12
13

**IT IS FURTHER ORDERED GRANTING** Garza's request to expand the record with Exhibit 38.

14
15

**IT IS FURTHER ORDERED DENYING** Claims 18, 19, 27, and 35 on the merits and Claim 37 as non-cognizable.

16
17

Dated this 28th day of March, 2017.

18
19
20
21

Susan R. Bolton
United States District Judge

22
23
24
25
26
27
28

- 34 -